## AFFIDAVIT IN SUPPORT OF AN APPLICATION
## FOR A CRIMINAL COMPLAINT

I, Scott Hanton, being duly sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of a criminal complaint charging Josue Osmin Montoya Acosta ("defendant") with reentry of a removed alien in violation of 8 U.S.C. § 1326.

2.      I am a Border Patrol Agent-Intelligence/Prosecution Case Manager with the Border Patrol, United States Customs and Border Protection, within the United States Department of Homeland Security, and have been an agent with Border Patrol since November 2010. I am currently assigned to the Houlton Sector Intelligence Unit, Houlton Sector Headquarters, in Hodgdon, Maine.

3.      I completed the Border Patrol Academy in February 2011, where I received instruction in constitutional law, immigration law, criminal law, and federal and civil statutes. I have also received instruction in the detection, interdiction, and arrest of narcotics smugglers, alien smugglers, and aliens illegally present in the United States. In the course of my employment with Border Patrol, I have been assigned to the Highway 90 and Highway 80 immigration checkpoints in Arizona, where I was the primary agent for multiple narcotic and human smuggling cases. From March 2020 to August 2022, I was assigned as a Case Agent for the Tucson Sector Prosecution Unit. I have conducted numerous investigations involving illicit activity and have gathered evidence and facts pertaining to administrative and criminal cases, to include immigration offenses, drug offenses, firearms offenses, and assaults on agents. In the course of my duties, I have taken sworn statements from material witnesses and suspects. I routinely perform

record checks through various law enforcement databases to establish accuracy of information as well as to gather facts further relevant to a respective case. I have acted as a liaison between the United States Attorney's Office and field agents, and I have assisted fellow agents in the development of their cases. I am currently assigned as a Houlton Sector Prosecutions Case Manager as a collateral duty.

4.      The information in this affidavit is based upon my review of records and information furnished to me in my official capacity by other law enforcement officials—including records and information from Border Patrol Agents-Resident Agents ("BPA-RA") Michael Kreft and Derek Wilcox and Brunswick Police Department Officer Owen Beattie—as well as information gained through my training and experience. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested arrest warrant and complaint.

<u>PROBABLE CAUSE</u>

5.      BPA-RA Michael Kreft performed a records check on the defendant and I have reviewed records and information demonstrating the following:

   a.  The defendant is a native and citizen of Honduras. Both of the defendant's parents are of citizens of Honduras.

   b.  A search of various systems to which the Border Patrol has access showed no potential claim to United States citizenship.

   c.  The Border Patrol encountered the defendant within the United States on about August 31, 2015.

   d.  On September 1, 2015, at the McAllen, Texas Border Patrol Station, the defendant was asked to provide a sworn statement regarding his application for admission to the United States and was informed of his rights and the

purpose and consequences of the interview. The defendant agreed to make statements and swore or affirmed that his statements were true and complete. The defendant admitted, in summary and in part:

    i. He was born in Honduras. He was a citizen of Honduras. His parents were citizens of Honduras.

    ii. He never lived in the United States under legal status. He did not have any claim to being a citizen of the United States. He did not have any documents that would allow him to enter, live, or work in the United States. He did not have any United States immigration petitions pending on his behalf.

    iii. He entered the United States on August 31, 2015, on a raft, knowing it was illegal to enter the United States in that manner. He was not inspected by a United States Immigration Officer at the time of entry.

e. On September 1, 2015, a Border Patrol Agent determined the defendant was inadmissible to the United States under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") and was subject to removal in that he was not a citizen or national of the United States, was a native and citizen of Honduras, and was an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the INA. The Border Patrol Agent issued an Order of Removal under Section 235(b)(1) of the INA, finding the defendant inadmissible and ordering him removed from the United States.

f. On about September 1, 2015, a Border Patrol Agent provided the defendant with a Notice to Alien Ordered Removed/Departure Verification. The Notice informed the defendant, in part:

    i. "You have been found to be inadmissible to the United states under the provisions of section 212(a) of the Immigration and Nationality Act (Act) or deportable under the provisions of section 237 of the Act as a Visa Waiver Pilot Program violator. In accordance with the provisions of section 212(a)(9) of the Act, you are prohibited from entering, attempting to enter, or being in the United States . . . For a period of 5 years from the date of your departure from the United States as a consequence of your having been found inadmissible as an arriving alien in proceedings under section 235(b)(1) or 240 of the Act."

    ii. "After your removal has been effected, you must request and obtain permission from the Secretary of Homeland Security to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. . . ."

    iii. "WARNING FOR ALL REMOVED ALIENS: It is a crime under Title 8 United States Code, Section 1326, for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent. Depending on the circumstances of the

removal, conviction for this crime can result in imprisonment of a
period of from 2 to 20 years and/or a fine up to $250,000.00."

g.  On September 7, 2015, the defendant was removed from the United States via
expedited removal through Brownsville, Texas.

h.  The Border Patrol encountered the defendant within the United States in July
2016. He was processed for reinstatement of the prior order of removal and
given a Notice of Intent/Decision to Reinstate Prior Order.

i.  On about July 28, 2016, the defendant was provided a Warning to Alien
Ordered Removed or Deported. The Warning informed the defendant, in part:

   i.   "In accordance with the provisions of section 212(a)(9) of the
        Immigration and Nationality Act (Act), you are prohibited from
        entering, attempting to enter, or being in the United States: For a
        period of 20 years from the date of your departure from the United
        States because, after having been previously excluded, deported, or
        removed from the United States, you have been found: to have
        reentered the United States illegally and have had the prior
        reinstated under section 241(a)(5) of the Act."

   ii.  "After your removal has been effected, you must request and obtain
        permission from the Secretary of Homeland Security to reapply for
        admission to the United States during the period indicated. You
        must obtain such permission before commencing your travel to the
        United States. . . ."

   iii. "WARNING FOR ALL REMOVED ALIENS: It is a crime under Title
        8 United States Code, Section 1326, for an alien who has been

removed from the United States to enter, attempt to enter, or be found in the United States without the Secretary of Homeland Security's express consent. Depending on the circumstances of the removal, conviction for this crime can result in imprisonment of a period of from 2 to 20 years and/or a fine up to $250,000.00."

j.  Because he had crossed into the United States as part of a family unit and claimed to be the sole caregiver of his minor child, the defendant was released as an alternative to detention. After Enforcement and Removal Operations, United States Immigration and Customs Enforcement, determined that the defendant was no longer the sole caretaker of his child, he was arrested and processed for reinstatement of the prior order of removal.

k.  On about October 17, 2016, the defendant was provided a Warning to Alien Ordered Removed or Deported, again advising him of the information identified in the July 2016 Warning.

l.  The defendant was removed from the United States on October 28, 2016, through Alexandria, Louisiana.

6.    BPA-RA Michael Kreft conducted a review of the Computer Linked Application Information Management System ("CLAIMS"), which is the system that tracks applications for immigration benefits and actions taken regarding such applications. No pending applications or petitions filed by the defendant or on his behalf seeking consent of the Secretary of DHS to reapply for admission to the United States were located, nor was any record located of the Secretary of DHS granting express consent for the defendant to reapply.

7.      On February 25, 2025, at approximately 10:18 p.m., Officer Owen Beattie of the Brunswick Police Department was observing traffic on Pleasant Street in Brunswick, Maine. Officer Beattie observed a vehicle that did not have a front plate, appeared to have a paper temporary registration on the rear of the vehicle, and did not have a light on the registration plate.[1] I understand that, because the plate was not lit, Officer Beattie was unable to determine whether the registration was valid, or to ascertain the registration number, until after he initiated a traffic stop.

8.      Officer Beattie caught up to the vehicle as it was pulling into a gas station on Pleasant Street and conducted a traffic stop in the station's parking lot. As Officer Beattie approached the vehicle, the operator started to exit. The operator indicated he did not speak English. Officer Beattie showed the operator that the lights on the registration plate were not working. The operator was able to get the registration lights to turn on. Officer Beattie determined the vehicle's rear registration to be a temporary registration from Indiana.

9.      Officer Beattie asked the operator if he had his license. The operator provided his passport from the Republic of Honduras. When asked if he had a driver's license, the operator told Officer Beattie he did not. When asked if he had a visa, the operator said he did not. The operator showed Officer Beattie a criminal summons on his phone issued in January 2025 by an officer with the Wiscasset Police Department.

10.     The passport from the Republic of Honduras identified the operator as Josue Osmin Montoya Acosta.

---

[1]      Title 29-A, Maine Revised Statutes, Section 1909 states: "A vehicle must have a white light capable of illuminating the rear registration plate so that the characters on the plate are visible for a distance of at least 50 feet. This section does not apply to unregistered farm tractors or vehicles with valid temporary plates issued by licensed car dealers."

11.     Officer Beattie contacted BPA-RA Derek Wilcox. BPA-RA Wilcox conducted a records check via mobile query and determined, in summary, that the defendant had previously been removed from the United States on two occasions and did not have a visa or other documentation that would allow him to reenter the United States. BPA-RA Wilcox relayed this information to BPA-RA Michael Kreft.

12.     BPA-RA Kreft responded to the location of the stop. Speaking with the defendant in BPA-RA Kreft's vehicle, BPA-RA Kreft identified himself as a Border Patrol Agent and asked the defendant, in Spanish, as to his citizenship and immigration status. The defendant acknowledged he was a citizen of Honduras, did not have documentation to stay or remain in the United States, and was illegally present in the United States. BPA-RA Kreft took the defendant into custody for immigration purposes and transported him to Two Bridges Jail in Wiscasset.

13.     On February 26, 2025, BPA-RA Kreft returned to Two Bridges Jail and continued processing the defendant for reinstatement of the prior order of removal.

14.     The defendant's identity was confirmed through a positive biometric hit by submitting his fingerprints through the DHS Automated Biometric Identification System ("IDENT").

CONCLUSION

15.     Based on my training and experience and the facts as set forth in this affidavit, I submit that probable cause exists to believe that Josue Osmin Montoya Acosta is an alien and was found within the United States of America after having been previously removed from the country, and not having obtained the express consent of the Secretary of DHS to reapply for admission to the United States in violation of 8 U.S.C. § 1326(a).

I, Scott Hanton, hereby swear under oath that the information set forth in this affidavit is true and correct to the best of my knowledge, information, and belief, and that I make this oath under the pains and penalties of perjury.

Dated at Portland, Maine this 4th day of March, 2025.

_____
Scott Hanton, Border Patrol Agent
U.S. Customs and Border Protection
U.S. Department of Homeland Security

Sworn to telephonically and signed
electronically in accordance with the
requirements of Rule 4.1 of the Federal Rules
of Criminal Procedures

Date:   Mar 04 2025

City and state:   Portland, Maine

_____
Judge's signature

Karen Frink Wolf,  U.S. Magistrate Judge
Printed name and title